**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **CHRISTA PIKE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:22-cv-00537** |
| | ) | |
| **FRANK STRADA, et al.,** | ) | **District Judge Campbell** |
| | ) | |
| **Defendants.** | ) | **Magistrate Judge Newbern** |

---

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Christa Pike ("Plaintiff"), who is presently incarcerated at the Debra K. Johnson Rehabilitation Center ("DJRC") in Nashville, Tennessee, filed a complaint pursuant to 42 U.S.C. § 1983 pertaining to the conditions of her confinement at DJRC. Counts 7, 8, and 9 allege that Defendants have violated the Americans with Disabilities Act ("ADA") and Rehabilitation Act by intentionally discriminating against Plaintiff because of her alleged disability and by failing to accommodate the same disability.

Partial summary judgment is warranted because Plaintiff did not properly exhaust the Tennessee Department of Correction ("TDOC") grievance process in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), with respect to Counts 7, 8, and 9. Accordingly, the Court should dismiss these three counts without prejudice.

## FACTUAL BACKGROUND

Plaintiff was sentenced to death after her 1996 conviction for murdering a teenage girl and is currently incarcerated at the DJRC. (D.E. 9, Amended Complaint, at ¶ 1.) Plaintiff filed suit on July 15, 2022 and named as Defendants TDOC Interim Commissioner Lisa Helton, Lee Dotson,

Gloria Fisher, Terry Barlow, Daffany Baker, and Clifford Jones, each in their official capacities. (*See generally* D.E. 9, Amended Complaint.)

In Counts 7, 8, and 9 of her Amended Complaint, Plaintiff alleges that Defendants have violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*, by intentionally discriminating against her because of an alleged mental health disability; violated the ADA, 42 U.S.C. § 12132, *et seq*, by failing "to provide reasonable accommodations and/or modifications in policies, practices, or procedures needed by qualified mentally ill or physically disabled individuals such as" Plaintiff; and violated the Rehabilitation Act, 29 U.S.C. § 794, *et seq*, by intentionally discriminating against her because of an alleged mental health disability. (*Id.* at ¶¶ 183-224.)

In her Amended Complaint, Plaintiff has alleged she suffers from and has been diagnosed with multiple severe mental impairments that qualify as disabilities under the ADA and Rehabilitation Act. (*Id.* at ¶¶ 187-188.) However, Plaintiff has never filed any grievance alleging that she has been discriminated against specifically because of a mental or physical disability, nor any grievance that could be construed as covering this subject matter. (SUMF at ¶¶ 18-21.) Thus, she has not properly exhausted the TDOC grievance process regarding these three counts in accordance with the PLRA's exhaustion requirement. (*Id.* at ¶ 1.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and admissions on file demonstrate that there are no genuine issues of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). The main inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In order to survive a motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Id.* at 252. The evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Therefore, summary judgment is warranted if the nonmoving party fails to establish the existence of an element essential to his case, on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because defendants carry the burden of proof for exhaustion, they bear an "initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion" and "that no reasonable jury would be free to disbelieve it." *Doe v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)). Summary judgment is appropriate in this context only if "there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id.* at 961 (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

## LAW AND ARGUMENT

### I. The PLRA Requires Exhaustion of Each Claim Before Filing a Lawsuit.

Congress enacted the PLRA to "reduce the quantity and improve the quality of prisoner suits." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (citations omitted). To that end, Congress decreed that "[n]o action shall be brought with respect to prison conditions under [federal law] by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. "Congress has mandated exhaustion ... regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion serves an important gatekeeping function for inmate claims in federal court. The exhaustion requirement is intended "to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). A prisoner "exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Id*.

The Supreme Court has held that prisoners must complete "proper exhaustion," *i.e.*, must use "all steps that the [prison] holds out." *Woodford*, 548 U.S. at 90. This includes engaging in an administrative appeal of a prison's initial decision, and doing so properly, so that the prison addresses the issues on the merits. *Id*. at 91-93. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Therefore, "[c]ompliance with prison grievance procedures… is required by the PLRA to 'properly exhaust.'" *Id*. "Proper exhaustion" must occur "*before* filing a federal lawsuit." *Johnson v. Burt*, No. 21-2878, 2023 WL 2125744, at *2 (6th Cir. Feb. 15, 2023) (citing *Woodford*, 548 U.S. at 90-91) (emphasis added). This also means "a prisoner cannot satisfy the ... exhaustion requirement by filing [a] procedurally defective administrative grievance." *Scott v. Ambani*, 577 F.3d 642, 647

(6th Cir. 2009). There are no futility or other exceptions to the exhaustion requirement under the PLRA. *Booth*, 532 U.S. at 741 & n. 6.

The Supreme Court has also determined that exhaustion of *each* claim is required before the claim may proceed. *Jones*, 549 U.S. 199 at 223; *see also Johnson*, 2023 WL 2125744, at *2 ("Exhaustion may not be completed after filing a complaint."). This means that in instances where "the prisoner has failed to exhaust some, but not all, of the claims asserted in the complaint," exhaustion should be analyzed on a "claim-by-claim" basis. *Id*. at 219, 224. For each claim, a plaintiff must exhaust the grievance process to the final level of the prison's appeal process prior to filing her complaint. *See Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999); *White v. McGinnis,*131 F.3d 593 (6th Cir. 1997).

The appropriate content of the grievances is not a feature of the PLRA; it is dictated by the requirements of the prison's grievance process. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Ultimately, the individual claims that have not been properly exhausted should be dismissed. *Id*.

## II. TDOC's Grievance Procedure Sets Forth What Is Required for Exhaustion.

The PLRA does not provide a uniform federal exhaustion standard; rather, the inmate's correctional institution defines the applicable procedural rules that the inmate must follow to exhaust his administrative remedies. *Jones*, 549 U.S. at 218. Thus, to comply with the PLRA's exhaustion requirement, an inmate must take "advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's

grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey*, 603 F.3d at 324.

TDOC has promulgated its own "critical procedural rules" in Policy 501.01 and the TDOC Inmate Grievance Procedures handbook. (SUMF at ¶ 2.) The TDOC grievance process provides "a forum where inmates may formally raise concerns over incidents or conditions that personally affect them and allows complaints to be considered and addressed at both the institutional and departmental level." (*Id.* at ¶ 5.) Each institution shall make grievance forms available in each housing unit and at the operations office which shall be given to any inmate, upon request, by the officer in charge. (*Id.* at ¶ 9.)

The grievance procedure developed by TDOC is set forth in Policy 501.01 and explained in the TDOC Inmate Grievance Procedures handbook. (*Id.* at ¶ 2.) The grievance chairperson to reviews all grievances received and log them as received and enter them on the Grievance screen on TOMIS. (*Id.* at ¶ 3.) A grievance under this process is a "written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within the Department or institution which personally affects the inmate complainant." (*Id.* at ¶ 6.)

Grievance forms are available in each housing unit and are given to any inmate upon request and are collected daily from locked depositories on each unit. (*Id.* at ¶ 7.) Inmates who are housed in segregation or are medically detained give their completed grievance forms to any staff member, and that staff member must deposit the grievance in the depository the same day. (*Id.* at ¶ 8.) Inmates (including capital offenders like Plaintiff) may also request assistance from an advocate in preparing and filing grievances and appeals. (*Id.* at ¶ 9.)

The TDOC grievance review procedure is a three-step process. (*Id.* at ¶ 10.) An inmate initiates the process by submitting a written grievance form within seven days of the complained-of incident; the grievance committee chairperson then forwards the grievance to the employee or the department involved for a response, and that response is reviewed by the chairperson who also provides a written response. (*Id.* at ¶ 11.) If the inmate accepts the response, the matter is considered resolved; if the inmate does not agree, she may appeal the response to the grievance committee and warden. (*Id.* at ¶ 12.) The grievance committee will then issue a proposed response, the proposed response is forwarded to the warden, and the warden reviews the committee's response and provides a response of agreement or disagreement. (*Id.* at ¶ 13.) If the inmate agrees with the warden's decision, the matter is considered resolved; if she disagrees, the inmate may then appeal to the Assistant Commissioner of Operations. (*Id.* at ¶ 14.) If a time limit expires at any stage of the grievance process without the required response from prison officials, the inmate may move the grievance to the next stage of the process, unless the inmate agrees to an extension of the applicable time period in writing. (*Id.* at ¶ 15.) If a grievance submitted by an inmate is deemed inappropriate, an abuse of the procedure, or non-grievable, the inmate may appeal that decision. (*Id.* at ¶ 16.)

All grievances filed by TDOC inmates are assigned a grievance number, and all grievances filed by inmates are stamped to indicate the date they were received by the grievance office. (*Id.* at ¶¶ 28-29.) Grievances assigned a unique label, such as "Title VI" are no different. However, Title VI grievances go through the extra step of being assigned a special designation on the TOMIS screen. TDOC Policy #501.01(VI)(K)(2) specifically requires the grievance chairperson to "review all grievances received and enter those listed as Title VI on Grievance screen [on TOMIS]

with a flag indicating Title VI if the grievant alleges discrimination on the basis of race, color, or national origin." (*Id*. at ¶ 26.)

## III. Plaintiff Failed to Exhaust Counts 7, 8, and 9 of Her Amended Complaint.

Plaintiff alleges that Defendants have violated the ADA and Rehabilitation Act by discriminating against Plaintiff because of an alleged disability and failing to accommodate that disability. (*See* D.E. 9, Amended Complaint, at ¶¶ 183-224.) This issue was not addressed via the TDOC grievance procedure through any grievance filed by Plaintiff, nor is any grievance of this nature part of the allegations in the complaint.[1] Plaintiff has alleged she suffers from "multiple severe mental impairments," "vision impairments, sleep problems, and reduced mobility," as well as "bipolar disorder, depressive disorder, obsessive compulsive disorder, and post-traumatic stress disorder." (D.E. 9, Amended Complaint, at ¶¶ 187-188.) While Plaintiff did not have to grieve the specific statutes and legal theories that serve as the basis for her claim, she was required to file a grievance addressing the general subject matter of one of these mental disabilities and that she is being treated differently because of it.[2]

She has not done so here. As evidenced by the declaration of DJRC Corporal Shawanna Davis, the grievance chairperson for DJRC, Plaintiff has not filed any grievances stating that she was discriminated against because of a mental or physical disability. (*See* SUMF ¶¶ 18-21.) A list of all of Plaintiff's filed grievances are logged on the grievance page of Plaintiff's TOMIS, a copy

[1] The Supreme Court has held that although "inmates are not required to specially plead or demonstrate exhaustion in their complaints," failure to exhaust is an affirmative defense that may serve as a basis for dismissal "if properly raised and proven by the defendants." *Jones*, 549 U.S. at 216; *see also McCloy v. Correction Med. Servs*., 794 F. Supp. 2d 743, 749 (E.D. Mich. 2011).

[2] Plaintiff has filed at least two grievances alleging *sexual* discrimination under Title IX of the Education Amendments Act. (*See* SUMF, Exhibit 4, pp. 65-82.) These grievances generally allege Plaintiff is being discriminated against "by virtue of [her] gender." (*Id*. at 75.) However, gender discrimination is not the same as disability discrimination. In any event, each grievance was deemed inappropriate at Level One and was not properly exhausted.

of which is attached to Corporal Davis's declaration. (*Id.* at ¶ 17.) In her role as grievance chairperson, Corporal Davis is able to access and review all of the grievances filed by inmates at DJRC. (*Id.* at ¶ 22.) Corporal Davis reviewed the grievance numbers listed on TOMIS and determined that none of them contain statements contending that TDOC or DJRC has discriminated against Plaintiff on the basis of a mental disability or violated the ADA or Rehabilitation Act in their treatment of her. (*Id.* ¶¶ 18-21.)

Plaintiff's failure to properly grieve her ADA and Rehabilitation Act claims, or even to generally identify a mental disability or request an accommodation in the grievance process, requires dismissal. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (ADA claim must be grieved); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007) (same); *Alster v. Goord*, 745 F. Supp. 2d 317 (S.D.N.Y. 2010) (same); *Green v. Thomson*, No. 1:20-CV-19 (LAG), 2021 WL 7967925, at *5 (M.D. Ga. Sept. 9, 2021), *report and recommendation adopted*, No. 120CV19LAGTQL, 2022 WL 1042915 (M.D. Ga. Feb. 28, 2022) (collecting cases).

While "perfect overlap" between the grievance and the complaint is not required, there must be a "shared factual basis between the two" because "the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (quoting in part *Woodford*, 548 U.S. at 94). "The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford*, 548 U.S. at 95. Here, Plaintiff has not filed any grievance informing TDOC or DJRC that Plaintiff believes they violated the ADA or Rehabilitation Act. Plaintiff has filed no grievance alleging that she suffers from a disability; nor has she grieved that Defendants are aware of and intentionally discriminating against Plaintiff because of that disability. TDOC or DJRC have not received a fair opportunity to respond to

Plaintiff's alleged disability or request for an accommodation via the grievance process prior the filing of this lawsuit.

Inclusion of this detailed factual basis is necessary for proper exhaustion to occur. TDOC's "critical procedural rules" required Plaintiff to "describe the problem in detail…" (SUMF ¶ 27.) A general grievance expressing a desire to be exempt from TDOC's Mandatory Segregation Policy is not the same as an allegation that Defendants intentionally discriminated against Plaintiff *because of* a mental disability (as opposed to, for example, some other valid penological reason). Thus, Defendants have not had a "fair opportunity to address… the merits" of the mental disability discrimination that serves as the factual basis of Plaintiff's ADA and Rehabilitation Act claims. Failure to file a grievance that omits the requisite factual basis does not constitute "proper exhaustion." *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

## IV. Plaintiff Did Not File the Grievance or Otherwise Submit the Document She Has Identified As "Pike_001943-001944."

Plaintiff has identified numerous grievances that allegedly serve as the basis for the nine counts she has brought. However, Plaintiff has not identified any grievance that properly exhaust Counts 7, 8, and 9 by presenting her claim of mental disability discrimination to TDOC. And the one document identified by Plaintiff that does mention discrimination was never filed or appealed through the grievance system.

In response to Defendants' written discovery, Plaintiff identified "Pike_001943-001944," which purports to be a grievance form filed by Plaintiff.[3] (*Id.* at ¶ 23.) The form refers to a "Title VI" grievance Plaintiff alleges to have filed and is accompanied by single typed page. (*Id.* at ¶ 24,

[3] Plaintiff identified "Pike_1943-001944" in response to an interrogatory requesting Plaintiff "[i]dentify all grievances relating to any of your allegations or causes of action in the Complaint, including the outcomes of any grievance."

Exhibit 5.) The typed page is not signed or dated. (*Id.* at 25.) It does not reference Plaintiff in any identifiable way, but it broadly alleges, without referring to Plaintiff by name, that DJRC is actively discriminating against Plaintiff because of "a mental health disorder." (*Id.* at Exhibit 5.) The grievance form does not have a "grievance number" listed in the blank space for it, nor does it contain a stamp showing it was received by the grievance chairperson. (*Id.* at ¶¶ 25, 30, Exhibit 5.) Corporal Davis states that every grievance that is filed by an inmate is assigned a "grievance number" and stamped on the date it was received. (*Id.* at ¶¶ 28-29.) The lack of these two features indicates this document was never submitted for the grievance review process. (*Id.* at ¶ 30.)

There is additional evidence that this purported grievance was never filed, much less properly exhausted. "Pike_001943-001944" is dated in handwriting "September 21, 2016." (*Id.* at ¶ 23.) But Plaintiff only filed one grievance in 2016, and it was assigned grievance number #305717 when it was received on August 26, 2016. (*Id.* at ¶ 32-33.) Grievance #305717 did not address any discrimination on the basis of a mental disability. It is not the typed grievance provided as Pike 001943-44. The TOMIS summary for grievance number #305717 indicates this grievance was not given Title VI designation and, instead, addressed Plaintiff's desire for more "consistent" recreation time.[4] (*Id.* at ¶¶ 34-35.)

Lastly, that Pike_001943-44 was never actually filed is self-evident from the face of the document itself. The entire portion "to be completed by grievance clerk" and "response" section are still blank, further indicating that it was not actually filed. (*Id.* at Exhibit 5.) The lack of these portions is evidence that this grievance was not filed. *See Perry v. Tennessee*, No. 3:21-CV-00461, 2023 WL 2601928, at *11 (M.D. Tenn. Mar. 22, 2023), *report and recommendation adopted*, No.

[4] When a grievance is filed, a record is created and the summary of the grievance is entered into the TOMIS. Grievance records are maintained by TDOC for five years after cut off in either paper or electronic format. Electronic summary is maintained permanently in TOMIS. That electronic summary for grievance #305717 is attached to the SUMF as Exhibit E.

3:21-CV-00461, 2023 WL 2938226 (M.D. Tenn. Apr. 13, 2023) (determining, for purposes of exhaustion, that a purported grievance could not have been filed "because if [it] had, the grievance would contain a grievance number, the date received, and the signature of the grievance clerk, and [prison] personnel would have responded."). There is no evidence that Plaintiff actually filed "Pike_001943-001944," much less properly exhausted it through the three-level review process for grievances. *See id.* ("Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process…").

Where, as here, a failure-to-exhaust defense has been raised and supported, the burden is on Plaintiff to present "significant probative evidence" showing that she complied with the PLRA's exhaustion requirements. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). Even if Plaintiff could demonstrate that she actually filed "Pike_001943-001944," there is still no evidence, based on the lack of any response or grievance number, that it progressed through all three levels of review within the TDOC grievance procedure. Completion of the three-level review process is necessary to satisfy the PLRA's exhaustion requirement. Accordingly, "there is no genuine dispute of material fact that the plaintiff failed to exhaust" for Counts 7, 8, and 9. *Doe v. Snyder*, 945 F.3d at 961.

## CONCLUSION

Counts 7, 8, and 9 are improper until and unless Plaintiff properly exhausts her administrative remedies in accordance with the PLRA and TDOC Procedure. In cases where a prisoner has "not satisfied the PLRA's exhaustion requirement… dismissal of his claims without prejudice is the proper result." *Johnson*, 2023 WL 2125744, at *2. Therefore, Plaintiff's claim should be dismissed without prejudice, and the Court should grant summary judgment with respect to these three counts, as the undisputed facts demonstrate Plaintiff has not properly exhausted her

administrative remedies pursuant the PLRA.

Respectfully Submitted,
JONATHAN SKRMETTI
Attorney General and Reporter

*s/ John R. Glover*
CODY N. BRANDON (BPR # 037504)
Assistant Attorney General
DEAN S. ATYIA (BPR # 039683)
Team Leader
Assistant Attorney General
JOHN R. GLOVER (BPR #037772)
Assistant Attorney General
STEVEN J. GRIFFIN (BPR #040708)
Assistant Attorney General
Law Enforcement and
Special Prosecutions Division
Office of the Tennessee
Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 741-1982
Fax: (615) 532-4892
Dean.Atyia@ag.tn.gov
Cody.Brandon@ag.tn.gov
John.Glover@ag.tn.gov
Steven.Griffin@ag.tn.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing was filed and served by operation of the Court's electronic filing system on this the 16th day of June 2023, upon:

Angela Lee Bergman
Brian D. Roark
Hannah E. Webber
150 Third Avenue South
Suite 2800
Nashville, TN 37201

*s/ John R. Glover*
JOHN R. GLOVER (BPR #037772)
Assistant Attorney General