IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTA PIKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:22-cv-00537 |
| | ) | |
| LISA HELTON, et al., | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE NEWBERN |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 17), which is fully briefed. (Doc. Nos. 26, 27). For the reasons discussed below, the motion will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Christa Pike ("Pike") is the only woman on Tennessee's death row. She has been incarcerated at the Debra K. Johnson Rehabilitation Center ("DJRC") in Nashville, Tennessee continuously since April 2, 1996. (Doc. No. 9 ¶ 24). On July 15, 2022, Pike filed the instant case pursuant to 42 U.S.C. § 1983 against the Interim Commissioner of the Tennessee Department of Correction ("TDOC"), the Assistant Commissioner of Prisons, the DJRC's Warden, Associate Warden of Security, Associate Warden of Treatment, and Manager of the Unit within the DJRC where she resides. (Doc. No. 1).

Through her Amended Complaint, filed on August 15, 2022, Pike claims the conditions in which she is confined amount to cruel and unusual punishment in violation of the Eighth Amendment (Count 1); that the nature and duration of her solitary confinement violate protected liberty interests under the Fourteenth Amendment (Count 2); that TDOC's policies are not applied to her equally on the basis of her sex in violation of the Equal Protection Clause (Count 3); that

Defendants have violated her right of access to her spiritual advisor in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq*, (Count 6); and that Defendants ignored obvious and known risks to the impact of solitary confinement on Pike's particular physical and mental vulnerabilities in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*, (Counts 7–8) and the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. (Count 9). (*See* Amended Complaint, Doc. No. 9).[1] Pike seeks declaratory and injunctive relief.

On September 20, 2022, Defendants filed the pending motion to dismiss Pike's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

---

[1] Pike voluntarily dismissed Counts 4 and 5 without prejudice in July 2023. (Doc. No. 88).

### III. ANALYSIS

To state a viable claim under Section 1983, the a plaintiff must allege "that a defendant acted under color of state law" and "that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012). Through their pending motion, Defendants argue the Amended Complaint should be dismissed because it does not allege deprivations of Pike's rights secured under the Eight or Fourteenth Amendments, the Equal Protection Clause, RLUIPA, the ADA, or the Rehabilitation Act.[2] For the reasons explained below, the Court finds that Pike has alleged facts, accepted as true, that state claims upon which relief can be granted against Defendants.

### A. Cruel & Unusual Punishment (Count I)

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. An inmate states a claim for violation of the Eighth Amendment by alleging conditions of confinement that "involve the wanton and unnecessary infliction of pain" or "pain without any penological purpose," or conditions that "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prisoners may also state an Eighth Amendment claim by alleging that prison officials have been deliberately indifferent to an inmate's serious medical needs or other substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 843 (1994). Defendants' argument for dismissal – that Pike does not allege being denied reasonably adequate food, clothing, shelter, sanitation, recreation, or medical care – is unpersuasive because Pike does not need to allege the foregoing in order to state a claim. *See supra*.

---

[2] Defendants raise new arguments in their reply concerning facial and as-applied challenges to TDOC policies. (*See* Doc. No. 27 at 3-5). Defendants did not raise or articulate any arguments regarding the foregoing in their opening brief, (Doc. No. 17), and the Court declines to consider the arguments raised for the first time in their reply in ruling on the pending motion to dismiss.

3

Taking Pike's factual allegations that she has been kept in solitary confinement for more than 25 years by prison officials who were deliberately indifferent to the effects of prolonged isolation on her already compromised mental health as true, the Court finds that she has alleged a viable Eighth Amendment violation. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) ("It is well established in both case law and scientific and medical research that prolonged solitary confinement … poses a substantial risk of serious psychological and physical harm[.]"); *Porter v. Clarke*, 923 F.3d 348, 355–56 (4th Cir. 2019) (holding that conditions on Virginia's death row violated the Eighth Amendment and noting that "[i]n recent years, advances in our understanding of psychology and new empirical methods have allowed researchers to characterize and quantify the nature and severity of the adverse psychological effects attributable to prolonged placement of inmates in isolated conditions").

### B. Procedural Due Process (Count 2)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). An inmate's treatment gives rise to a constitutional right to due process under the Fourteenth Amendment when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The extent of the hardship is weighed in light of the nature of the more-restrictive confinement and its duration. *See Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). The Supreme Court and the Sixth Circuit have held that placement in administrative segregation can be "atypical and significant in relation to the ordinary incidents of prison life" in extreme circumstances, such as when an inmate is allegedly subject to an excessively long or indefinite administrative segregation. *Austin*, 545 U.S. at 223–24; *Harden–*

*Bey*, 524 F.3d at 793-95; *see, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (Prisoner's confinement in administrative segregation for 13 years was sufficiently atypical as to give rise to a protected due process liberty interest); *Harris v. Caruso*, 465 F. App'x. 481, 484 (6th Cir. 2012) (a prisoner's 8-year confinement in segregation was of "atypical duration" and presented a cognizable liberty interest).

Here, Pike alleges that the duration of her solitary confinement and the severity of the conditions of that confinement constitute an atypical and significant hardship as compared with the ordinary incidents of prison life due to the extremely harsh and isolated conditions of her solitary confinement, the 25 year long duration of her solitary confinement, and the cumulative adverse physical and psychological effects stemming from such confinement. (Doc. No. 9 ¶¶ 157, 158). The Court has no difficulty in finding that Pike's alleged confinement in administrative segregation for more than 25 years states a cognizable liberty interest. *See Selby*, 734 F.3d at 559. Defendants' argument that Pike "has no liberty interest in a housing assignment with the general population," (Doc. No. 23 at 19-21), misses the mark as Pike does not claim to have a liberty interest in being housed with the general population.

## C. Equal Protection (Count 3)

"The Fourteenth Amendment's guarantee of the 'equal protection of the laws' bars governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated without any rational basis for the difference." *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023). Here, the Amended Complaint implicates the second and third types of equal protection claims, alleging Pike was subjected to sex-based discrimination and treated as a "class-of-one" without rational basis.

*Suspect Class Theory* – Defendants contend that Pike fails to allege a violation of her rights under a suspect class theory because the alleged disparate treatment of men and women on death row mischaracterizes the TDOC's application of the Mandatory Segregation Policy. (*See* Doc. No. 23 at 16; *see also id*. at 17 ("What Plaintiff's Complaint really seeks is an *unequal* application of the laws.") (emphasis in original)). Thus, Defendants ask the Court to construe the factual allegations in a manner that favors their argument rather than in the light most favorable to Pike as required by the standard of review. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court declines to do so. Accordingly, Defendants' motion will not be granted on this ground.

*Class-of-One Theory* – To prevail on a class-of-one claim with circumstantial evidence, Pike must ultimately show that (1) Defendants "intentionally treated" her "differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Green Genie*, 63 F.4th at 527 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The similarly situated determination is a question of fact. *Loesel v. City of Frankenmuth*, 692 F.3d 452, 463 (6th Cir. 2012). A class-of-one plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negating every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will. *See Anders v. Cuevas*, 984 F.3d 1166, 1179 (6th Cir. 2021).

Defendants contend that Pike fails to allege a violation of her rights under a class-of-one theory because she fails to allege a similarly situated individual. (Doc. No. 23 at 17-18).[3] Here, the

---

[3] Defendants also challenge the sufficiency of Pike's allegations as to the absence of a rational basis for the alleged difference in treatment. However, Defendants' entire argument on this point is that Pike "fails to negative any of the many rational bases that could explain any differences in treatment; and the only allegation supporting a claim of animus is the conclusory allegation that Plaintiff's treatment is 'the result of animus directed toward [her].'" (*See id*. at 19 (quoting Amended Complaint, Doc. No. 9 ¶ 166)). It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to

6

Amended Complaint identifies at least two individuals as similarly situated to Pike. First, it alleges a prior TDOC Commissioner granted Gaile Owens, the only other woman on death row during Pike's incarceration, an individualized exception to the TDOC Mandatory Segregation Policy at the request of a prior Warden of DJRC. (*See* Doc. No. 9 ¶ 49). Second, it alleges Defendants did not subject Nick Sutton, a male prisoner on death row, to years of solitary confinement for his participation in the targeted killing of another incarcerated individual. (*See id.* ¶ 135). Additionally, Pike points to the allegations that she is classified by the terms of Defendants' comprehensive evaluations in the same way as Owens and Sutton. (Doc. No. 26 at 15 (citing Amended Complaint, Doc. No. 9 ¶¶ 7, 26, 52-53)). These allegations are sufficient to satisfy the "similarly situated" requirement for a class-of-one claim at the pleading stage. *See Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 474-75 (6th Cir. 2021). Defendants' arguments to the contrary are unpersuasive as Defendants do not cite to any authority supporting their position or defend it in their reply. (*See* Doc. No. 23 at 17-18; Doc. No. 27).

## D. RLUIPA (Count 6)

Congress enacted RLUIPA to ensure "greater protection for religious exercise than is available under the First Amendment." *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022) (citing *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)). The statute, which expands First Amendment protections accorded prisoners with respect to their religious beliefs, states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution [including state prisoners], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and

---

... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997). In instances such as this, where "[i]ssues [are] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," the issue is considered forfeited. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson*, 125 F.3d at 995–96).

> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Congress specified that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc-3(g). The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7). "To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice." *Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014). "So long as the practice is traceable to a sincerely held religious belief, *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005), it does not matter whether the inmate's preferred exercise is "central" to [their] faith, 42 U.S.C. § 2000cc–5(7)(A)." *Haight*, 763 F.3d at 560.

When prison officials "effectively bar" an inmate's sincere faith-based conduct, they necessarily place a substantial burden on it. *See Haight*, 763 F.3d at 565 (citation omitted); *see also Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 459 (6th Cir. 2019) ("Barring group worship ... burden[ed]" a Wiccan prisoner's desired "religious exercise" of communal worship. The existence of a "second-best option"—worshiping "in his cell"—made the "burden ... no less substantial."). The sincerity of a prisoner's religious beliefs is a question of fact that asks if a prisoner's religious belief is honest. *See Ackerman v. Washington*, 16 F.4th 170, 180 (6th Cir. 2021) (sincerity requirement is just a "credibility assessment"); *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 459 (6th Cir. 2019); *see, e.g. Haight*, 763 F.3d at 565–66 ("To the extent the prison officials think that the [] inmates are faking it when it comes to their [] religious beliefs" … they may ask the courts to filter out insincere requests "[w]ith a properly developed record (including testimony from the inmates, reference to religious texts, etc.)[.]").

8

Here, the Amended Complaint alleges Defendants have prohibited Pike from having contact visits with her spiritual advisor for no reason. (*See* Amended Complaint, Doc. No. 9 ¶¶ 4, 77, 79, 83-84). Defendants argue the Amended Complaint fails to state a RLUIPA claim because it does not allege Defendants substantially burdened a sincerely held religious belief. (*See* Doc. No. 23 at 26-27; Doc. No. 27 at 8-9). In her response, Pike contends that she has adequately alleged that she wishes to exercise her faith by having contact visits with her spiritual advisor and that Defendants have prohibited her from doing so without reason. (*See* Doc. No. 26 at 33-34).

The Court finds that, viewing the facts alleged in the light most favorable to Pike and drawing all reasonable inferences in her favor, the Amended Complaint states a RLUIPA claim that Defendants imposed a substantial burden on Pike's religious exercise by barring her from contact visits with her spiritual advisor.

### E. ADA and Rehabilitation Act claims (Counts 7, 8, 9)

Defendants argue dismissal is appropriate as to Counts 7, 8, and 9 because the Amended Complaint fails to allege a prima facie case for intentional discrimination and failure to accommodate. (*See* Doc. No. 23 at 22-26). However, the "prima facie case under *McDonnell-Douglas* ... is an evidentiary standard, not a pleading requirement."[4] *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002); *see also id.* at 511 ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). Rather, Plaintiffs need only allege facts that "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[D]etailed factual allegations" are not necessary; a plaintiff need only "allege sufficient

---

[4] The *McDonnell Douglas* burden-shifting framework applies to discrimination claims brought under the ADA and the Rehabilitation Act. *See M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021).

'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that a defendant violated the respective statutes. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678, 679). Here, viewing the factual allegations in the light most favorable to Pike and drawing all reasonable inferences in her favor, the Amended Complaint plausibly alleges sufficient factual content to survive Defendants' motion to dismiss as to Counts 7, 8, and 9.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE