IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **CHRISTA PIKE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:22-cv-00537** |
| | ) | |
| **v.** | ) | **District Judge Crenshaw** |
| | ) | |
| **FRANK STRADA, JOE MOORHEAD, TAUREAN JAMES, TERRY BARLOW, ASHLEE WHEELER, and JACQUELINE WILSON, each in their Official capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF CHRISTA PIKE'S EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Christa Gail Pike, through undersigned counsel, respectfully moves this Court on an emergency basis for an order enforcing the Settlement Agreement executed by the Parties in September 2024 (the "Settlement Agreement" or "Agreement") (Exhibit A). Emergency treatment is necessary because Defendants are, at this moment, holding Ms. Pike in indefinite isolation in the prison infirmary following the Tennessee Department of Correction's failed execution that left her gravely injured.[1]

## INTRODUCTION

This case was resolved on a simple premise: that Ms. Pike, the only woman under a sentence of death in Tennessee, would no longer be held in isolation from every other woman in custody at the Debra K. Johnson Rehabilitation Center ("DJRC"). The Parties memorialized that central premise in a binding Settlement Agreement, pursuant to which this Court dismissed Ms.

[1] Undersigned counsel certifies that pursuant to Local Rule 7.01(a)(1), on October 30, 2026, counsel conferred with counsel for Defendants, the Office of the Tennessee Attorney General, regarding the relief requested in this Motion. Defendants opposed the relief sought.

Pike's Eighth Amendment, due process, equal protection, RLUIPA, ADA, and Rehabilitation Act claims in exchange for an Individualized Plan that guarantees her work, meals, recreation, religious services, and supervised group interaction with other inmates. Defendants also expressly agreed that this Court "shall retain jurisdiction to enforce this Agreement and award remedies for any breach of this Agreement." (Ex. A ¶ 21.)

On September 30, 2026, the State attempted to execute Ms. Pike. As widely reported, that attempt failed. After multiple painful, failed attempts at setting an IV line and two massive doses of pentobarbital, Ms. Pike survived, but with severe injuries. She spent multiple days on a ventilator and over a week in the medical intensive care unit at a hospital following the State's disastrous execution attempt. Since her discharge from the hospital on October 9, 2026, Defendants have confined her in isolation in the DJRC infirmary, cut off from all other inmates. They are denying her the opportunity to work, eat, and otherwise socialize with any other women at DJRC as set out in the Agreement. Defendants refused Ms. Pike's reasonable request to be housed with other women receiving temporary medical care. Instead, the State indicated on multiple occasions that they intend to keep her in isolation "until further notice." (Exhibit B, Declaration of A. Bergman, ¶ 5.) ("Bergman Decl.")

The State's actions breach the Agreement. Taken together, and imposed on a woman with a documented history of nearly thirty years in solitary confinement who is now recovering from injuries the State inflicted upon her, they also offend the Eighth Amendment, the liberty interests under the Fourteenth Amendment, the ADA, and the Rehabilitation Act. Ms. Pike asks the Court to do what Defendants agreed the Court has the authority do: enforce the Agreement now, before further irreparable harm occurs.

## STATEMENT OF FACTS

### I. The Action, the Order, and the Settlement Agreement

Ms. Pike commenced this Action on July 15, 2022, against TDOC and DJRC employees in their official capacities, alleging violations of her constitutional and statutory rights arising from her solitary conditions of confinement in DJRC Unit III B-Pod under TDOC's Mandatory Segregation Policy, TDOC Policy 404.11. (Ex. A ¶¶ 3, 6.) Because Ms. Pike is the only woman sentenced to death in Tennessee, that policy meant she was "continually segregated from all other inmates." (*Id.* ¶¶ 1, 3.)

On September 25, 2023, this Court denied Defendants' Motion to Dismiss (Doc. No. 17) in its entirety, allowing Ms. Pike's claims to proceed. (Doc. No. 131.) The claims that survived and were pending at the time of settlement included Cruel and Unusual Punishment in violation of the Eighth Amendment, violation of Procedural Due Process, violation of Equal Protection, violation of RLUIPA, violation of the ADA (including failure to accommodate a disability), and violation of the Rehabilitation Act. (Ex. A ¶ 10.)

After extensive discovery and settlement negotiations, the Parties executed the Settlement Agreement, which was approved by the Commissioner and signed by counsel for Defendants from the Office of the Attorney General. (*Id.* ¶¶ 12–14, 24; *id.* at 10.) The Parties warranted that they entered the Agreement voluntarily and with full understanding of its terms. (*Id.* ¶¶ 16–17.) The Agreement's core is Section B, "Changes to Conditions of Confinement," which established an "Individualized Plan" proceeding through three phases toward meaningful, consistent social interaction. (*Id.* ¶ 27.) Phase Three provides for, among other things:

> "Housing: Remain in current housing or comparable housing that allows compliance with the terms of the Individualized Plan." (*Id.* ¶ 27(c)(ii).)

"Social Interaction: Participate in supervised group interactions in A Pod or with the group workmates or close custody individuals housed in B Pod, including group meals, group classes, lobby time, and group religious services." (*Id.* ¶ 27(c)(iv).)

"Exercise/Recreation: Participate in recreation in cages in the same cage as others." (*Id.* ¶ 27(c)(v).)

Phase Three also provides for work as an administrative assistant or clerk, interaction with staff and other inmates, lunch outside her cell in the day room, education, group religious services, and contact counseling. (*Id.* ¶ 27(c)(iii), (vi)–(viii).) The Commissioner granted Ms. Pike a waiver of the Mandatory Segregation Policy "[s]o long as Ms. Pike is the sole inmate in the facility where she is housed who is under a sentence of death, subject to the Mandatory Segregation policy, and classified as Level A or Level B." (*Id.* ¶ 31.) Defendants "acknowledge[d] and agree[d] that the Individualized Plan shall remain in place for Ms. Pike, subject to any level changes due to any disciplinary convictions per TDOC Policy 503.03." (*Id.* ¶ 35.) Importantly, Defendants further agreed to "take **all actions reasonably necessary** to effectuate the approval, performance, validity, and enforceability of this Agreement." (*Id.* ¶ 25 (emphasis added).)

Finally, the Parties agreed that this Court "shall retain jurisdiction to enforce this Agreement and award remedies for any breach of this Agreement" (*id.* ¶ 21), that the dismissal "shall provide that the United States District Court for the Middle District of Tennessee shall retain jurisdiction over the Parties to enforce the Agreement and to award remedies for any breach" (*id.* ¶ 34), that they "consent to personal jurisdiction and venue" in this Court (*id.*), and that in the event of breach they "shall have all remedies that may be available to them at law or in equity," with fees to the substantially prevailing party for any material breach (*id.* ¶ 36).

Consistent with those terms, on September 16, 2024, the Parties jointly moved for dismissal under Federal Rule of Civil Procedure 41(a)(2) (Doc. No. 148), and on September 20, 2024, the Court granted the Joint Motion, dismissed the action with prejudice "subject to the terms of the Settlement Agreement," and ordered that it "retains jurisdiction over the Parties to enforce the Settlement Agreement and to award remedies for any breach of the Settlement Agreement." (Doc. No. 149.)

## II. The Failed Execution and Its Aftermath

On September 30, 2026, the State attempted to execute Ms. Pike. (Exhibit C, Declaration of Christa Gail Pike ("Pike Decl.") ¶ 8.) After multiple failed IV attempts and the administration of two lethal doses of pentobarbital, Ms. Pike survived. (*Id.* ¶¶ 9–10.) She sustained severe injuries as a result of the botched execution. (*Id.* ¶ 12.) She was eventually transported to a hospital and placed on a ventilator for multiple days before regaining consciousness. (*Id.* ¶ 11.) She was discharged on October 9, 2026, and returned to DJRC. (*Id.* ¶ 13.)

Since her return, Ms. Pike has been confined in isolation in the prison infirmary, segregated from all other inmates and denied meaningful human contact. (*Id.* ¶14.) The Office of the Attorney General stated that this isolation in the infirmary will endure "until further notice." (Bergman Decl., ¶¶ 3, 5.) Through counsel, Ms. Pike requested to be returned to the same maximum-security unit from prior to her execution, but to be housed within the separate pod for women receiving temporary medical care, an area that offers both adequate medical services and safe social contact alongside women with comparable vulnerabilities and without significant disciplinary or behavioral issues. (*Id.* Exhibit 1.) Defendants denied that request. (*Id.* ¶ 5.) Ms. Pike remains severely weakened and disabled as a direct result of the State's actions, and she could not defend herself if attacked. (Pike Decl. ¶¶ 18, 20.) In addition, Ms. Pike has a documented history of nearly

thirty years of solitary confinement and attendant psychological harm and trauma before the resolution under the Agreement, and her renewed isolation has caused, and will continue to cause, significant psychological harm and trauma. (*Id.* ¶¶ 5–6, 21–22.)

Ms. Pike remains the only woman under a sentence of death in Tennessee, still enjoys the Commissioner's waiver of the Mandatory Segregation Policy issued in conjunction with the settlement, and has not waived any rights under the Agreement. (*Id.* ¶¶ 4, 17.) She therefore respectfully requests that the Court enforce the Agreement and order TDOC to satisfy its obligation to "take all actions reasonably necessary to effectuate the approval, performance, validity, and enforceability of this Agreement." (Ex. A ¶ 25.)

## ARGUMENT

### I. This Court Has Jurisdiction and Inherent Authority to Enforce the Settlement Agreement.

Federal courts have "inherent power to enforce agreements entered into in settlement of litigation pending before them." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (quoting *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976). Following dismissal, a district court retains ancillary jurisdiction to enforce a settlement where "the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

Both conditions are satisfied here. The Parties expressly agreed that this Court "shall retain jurisdiction to enforce this Agreement and award remedies for any breach" (Ex. A ¶ 21; Doc. No. 149), required that the dismissal so provide and attach the Agreement (*id.* ¶ 34), and consented to

personal jurisdiction and venue (*id.*). The agreement was reached on all material terms, and the validity of the agreement is not in dispute. *See Brock*, 841 F.2d at 154.

This Court has presided over this dispute since 2022 and, in its Order denying Defendants' Motion to Dismiss, sustained the very conditions-of-confinement claims that the Agreement resolved. (Doc. No. 131; Ex. A ¶ 10.) Defendants bargained for dismissal of those claims in exchange for affording Ms. Pike relief from isolation; they cannot now retain the benefit of Ms. Pike's dismissal while eschewing their obligations. And because the Agreement is clear on its face, no evidentiary hearing on formation is needed; the only question is compliance. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) (evidentiary hearing required only where facts material to the agreement's existence or terms are disputed).

## II. Defendants Are in Immediate and Ongoing Breach of the Settlement Agreement.

A settlement agreement is a contract governed by state law, here Tennessee law. (Ex. A ¶ 18.) Under Tennessee law, courts enforce the plain meaning of contract terms to give effect to the parties' intent, *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611–12 (Tenn. 2006), and every contract carries an implied covenant of good faith and fair dealing in its performance, *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 666 (Tenn. 2013). The Agreement is to be "construed as a whole" according to its fair meaning. (Ex. A ¶ 23.)

Here, Defendants have returned to indefinite isolation a woman who endured nearly thirty years of it and had to sue for relief. Defendants' actions come immediately after inflicting torturous physical and psychological injuries on her. Defendants' breach is all the more egregious because a compliant alternative that would provide both medical care and human contact stands available. The objective seriousness of the deprivation of rights and Defendants' knowledge of the risk of harm to Ms. Pike from her continued isolation are evident. These facts confirm the reasonableness

and urgency of enforcing the Agreement according to its terms, and they demonstrate that the conditions the Agreement was designed to cure have returned in aggravated form.

**A. Indefinite isolation in the infirmary violates the Individualized Plan.**

The Individualized Plan is not aspirational or based on convenience. It "shall remain in place for Ms. Pike, subject to any level changes due to any disciplinary convictions." (Ex. A ¶ 35.) Surviving an execution attempt is, of course, not a disciplinary infraction. Yet Defendants have stripped her of every social-interaction guarantee the Individualized Plan provides: the "supervised group interactions . . . including group meals, group classes, lobby time, and group religious services" (Ex. A ¶ 27(c)(iv)); recreation "in the same cage as others" (*id.* ¶ 27(c)(v)); and work and lunch alongside other inmates (*id.* ¶ 27(c)(iii)). (Pike Decl. ¶¶ 14–15.) Segregation from all other inmates is precisely the condition the Agreement was designed to end. (Ex. A ¶¶ 3, 5, 31.)

Nor is indefinite infirmary placement permissible housing. The Individualized Plan requires Defendants to house Ms. Pike in Unit III or "comparable housing that allows compliance with the terms of the Individualized Plan." (Ex. A ¶ 27(c)(ii).) Housing that isolates Ms. Pike from every other person, without end date, by definition does not allow compliance. Ms. Pike does not dispute that she requires medical care; she asked for exactly that, in a secure setting that provides both medical services and social contact with other women receiving temporary medical care. (Bergman Decl., Ex. 1.) Defendants' refusal of that available alternative, while characterizing the isolation as functionally indefinite, is a breach of Paragraphs 27, 31, and 35 of the Agreement and of Defendants' duty to "take all actions reasonably necessary to effectuate the . . . performance" of the Agreement (Ex. A ¶ 25), as well as the implied covenant of good faith. *See Dick Broad. Co.*, 395 S.W.3d at 666.

A medical need caused by the State's own horrific misconduct does not authorize Defendants to suspend, indefinitely and unilaterally, every bargained-for term of the settlement, and it is incumbent upon Defendants to house Ms. Pike in a way that is both safe for her in the physical condition in which the State has left her and in compliance with the Settlement Agreement.

### B. The waiver of the Mandatory Segregation Policy remains in force.

The Commissioner's waiver of TDOC Policy 404.11 and related provisions of Policy 503.03 continues "[s]o long as Ms. Pike is the sole inmate in the facility where she is housed who is under a sentence of death, subject to the Mandatory Segregation policy, and classified as Level A or Level B." (Ex. A ¶ 31.) Each of these conditions remains satisfied. Defendants may not reimpose *de facto* mandatory segregation under the label of medical housing. Any amendment or waiver of the Agreement requires "a statement in writing signed by the Party against which enforcement . . . is sought." (*Id.* ¶ 20.) Ms. Pike has signed no such waiver.

## III. Emergency Relief Is Warranted.

Each day of continued isolation inflicts psychological harm that cannot be adequately remedied after the fact and violates the explicit terms of the Agreement. (Pike Decl. ¶¶ 21–22.) Defendants, by contrast, suffer no cognizable harm from being required to honor an agreement they negotiated, signed, and had approved by the Commissioner and the Attorney General, particularly where a remedy already exists.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Ms. Pike respectfully requests that the Court:

1. Enter an order enforcing the Settlement Agreement and directing Defendants to cease her indefinite isolation and restore the conditions of the Individualized Plan to the

fullest extent consistent with her medical needs and personal safety, including accommodating group meals, recreation, work, and other social interaction;

2. Award Ms. Pike her reasonable attorneys' fees, costs, and expenses pursuant to Paragraph 36 of the Settlement Agreement; and
3. Grant such other and further relief as the Court deems just and proper.

Ms. Pike also respectfully requests for this motion to be addressed on an expedited basis, and counsel is available to be heard at the Court's convenience. Ms. Pike requests an expedited briefing schedule on this motion and proposes a deadline of Wednesday, November 4th for a response from Defendants and Friday, November 6th for any reply by Ms. Pike.[2]

Dated: October 30, 2026

Respectfully submitted,

*/s/ Angela L. Bergman*
Brian D. Roark (BPR 020262)
Angela L. Bergman (BPR 031981)
Hannah E. Webber (BPR 036244)
BASS, BERRY & SIMS PLC
21 Platform Way South, Suite 3500
Nashville, TN 37203
Phone: (615) 742-7738
Fax: (615) 742-6293
broark@bassberry.com
abergman@bassberry.com
hannah.webber@bassberry.com

[2] Undersigned counsel also proposed this briefing schedule to counsel for the Defendants during their October 30 conference. Counsel for the Defendants oppose this request.

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed and served by operation of the Court's electronic filing system on this the October 30, 2026 upon:

Cody N. Brandon (BPR # 037504)
Donna L. Green (BPR #019513)
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 741-1982
Fax: (615) 532-4892
Cody.Brandon@ag.tn.gov
donna.green@ag.tn.gov

*/s/ Angela L. Bergman*