# <u>EXHIBIT A</u>

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into effective as of the date of the signature below ("Effective Date") by and between the parties to the above-captioned action, *Pike v. Strada, et al.*, including Christa Gail Pike ("**Ms. Pike**"), on the one hand; and, on the other hand, Frank Strada, in his official capacity as the Commissioner of the Tennessee Department of Correction ("**Commissioner Strada**"); Joe Moorhead, in his official capacity as Assistant Commissioner of Prisons for the Tennessee Department of Correction ("**Assistant Commissioner Moorhead**"); Taurean James, in his official capacity as Warden of the Debra K. Johnson Rehabilitation Center ("**Warden James**"); Terry Barlow, in his official capacity as Associate Warden of Security at the Debra K. Johnson Rehabilitation Center ("**Associate Warden Barlow**"); Ashlee Wheeler, in her official capacity as Associate Warden of Treatment at the Debra K. Johnson Rehabilitation Center ("**Associate Warden Wheeler**"); and Jacqueline Wilson, in her official capacity as Unit Manager of Unit Three at the Debra K. Johnson Rehabilitation Center ("**Unit Manager Wilson**") (collectively, **"Defendants"** and together with Ms. Pike, each individually, "Party" and collectively, "Parties").

## RECITALS

1. **Whereas,** Ms. Pike, Tennessee Department of Correction ("TDOC") Inmate No. 261368, is the only woman sentenced to death in Tennessee, and she is serving her death sentence at the Debra K. Johnson Rehabilitation Center ("DJRC"), formerly known as the Tennessee Prison for Women ("TPW");

2. **Whereas,** Ms. Pike resides in B-Pod of a housing unit known as Unit III ("Unit III B-Pod");

3. **Whereas,** because of Ms. Pike's sentence of death, she is subject to TDOC Policy 404.11 ("Mandatory Segregation Policy"), which provides for the mandatory segregation of inmates under a sentence of death from inmates not under a sentence of death, but because she is the only woman sentenced to death, this means Ms. Pike is continually segregated from all other inmates;

4. **Whereas,** TDOC Policy 503.03 governs the privileges to which inmates under a sentence of death are entitled, with Level C being the most restrictive and Level A being the least restrictive;

5. **Whereas,** Ms. Pike has been classified as Level A under TDOC Policy 503.03 since June 2022, but because she is the sole female inmate subject to the Mandatory Segregation Policy, she is not afforded access to the group activities or any social interaction as otherwise allowed under TDOC Policy 503.03;

6. **Whereas,** on July 15, 2022, Ms. Pike commenced a lawsuit, No. 3:22-cv-537, styled as *Pike v. Strada, et al.*, in the United States District Court for the Middle District of Tennessee (the "Action"), against multiple state officials in their official capacities alleging

violations of her constitutional and statutory rights in connection with her solitary conditions in Unit III B-Pod under the Mandatory Segregation Policy;

7. **Whereas,** throughout the course of the Action, Ms. Pike has been represented by counsel of Bass, Berry & Sims PLC;

8. **Whereas,** on August 15, 2022, Ms. Pike filed a First Amended Complaint ("FAC") (Dkt. No. 9), the operative complaint in the Action on the date of or immediately preceding the Effective Date of this Agreement;

9. **Whereas,** in the FAC, Ms. Pike alleged that the duration and conditions of her confinement together violated her rights under the First, Eighth, Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794;

10. **Whereas,** the remaining claims in the Action as of the Effective Date include: Cruel and Unusual Punishment in Violation of the Eighth Amendment to the United States Constitution; Violation of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution; Violation of the Right to Equal Protection under the Fourteenth Amendment to the United States Constitution; Violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1; Violation of the Americans With Disabilities Act, 42 U.S.C. § 12132, *et seq.*; Violation of the Americans With Disabilities Act by Failure to Accommodate a Disability, 42 U.S.C. § 12132, *et seq.*; and Violation of the Rehabilitation Act, 29 U.S.C. § 794 (collectively, "Ms. Pike's Claims");

11. **Whereas,** this Agreement is neither an admission of liability by Defendants nor a concession by Ms. Pike that her claims are not well founded, and Defendants deny all of Ms. Pike's Claims and have defended the Action accordingly;

12. **Whereas,** the Parties have engaged in extensive discovery and settlement negotiations in an effort to resolve the Action;

13. **Whereas,** without conceding any claims or defenses raised in the Action, the Parties now wish to resolve the Action and Ms. Pike's Claims to avoid the risks and expense of further litigation;

14. **Now therefore,** in consideration of the mutual promises and covenants contained herein, the mutual execution of this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby specifically contract, covenant, and agree as follows.

## A. GENERAL PROVISIONS

15. **Recitals.** The foregoing recitals are contractual in nature and are mutual representations of the Parties.

16. **Warranty and Voluntary Agreement.** Ms. Pike and Defendants warrant that they have entered into this Agreement voluntarily and of their own accord without reliance on any inducement, promise, or representation by any other Party, except those that are expressly set forth in this Agreement. This Agreement contains and constitutes the entire understanding and agreement between Ms. Pike and Defendants respecting the subject matter hereof, and all oral discussions and prior agreements are merged herein.

17. **Warranty and Understanding of Acknowledgement.** Ms. Pike and Defendants have carefully read this Agreement, know and understand its contents, and freely and voluntarily agree to all of its terms and conditions.

18. **Applicable Law.** Except to the extent any provision is governed by federal law that supersedes state law, the validity, construction, and enforcement of this Agreement shall be determined according to the laws of the State of Tennessee without giving effect to any choice of law or conflict of law provisions or rules (whether of the State of Tennessee or any other jurisdiction) that would cause the application of the law of any jurisdiction other than the State of Tennessee.

19. **Notices.** All notices and other communications required or permitted under this Agreement shall be considered validly given, made, or served if in writing and delivered personally, by nationally recognized overnight express courier, or by certified mail with postage prepaid and return receipt requested, to the following addresses:

*If to Ms. Pike*:

Christa G. Pike
TDOC ID: 261368
Debra K. Johnson Rehabilitation Center
3881 Stewarts Lane
Nashville, TN 37243

Brian D. Roark
Angela L. Bergman
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201

*If to the Tennessee Department of Correction*:

Tenn. Dept. of Correction
Rachel Jackson Building, 6th Floor
320 6th Avenue North
Nashville, Tennessee 37243

*With a copy to*

Tennessee Attorney General and Reporter
Law Enforcement and Special Prosecutions Division
P.O. Box 20207
Nashville, Tennessee 37202

The Parties further agree to give notice by email in conjunction with any of the above-listed methods for physical delivery; however, email alone will not constitute notice to a Party under this provision unless the Party being noticed responds in writing (email sufficient) to acknowledge receipt and the sufficiency of the emailed notice.

20. **Amendment and Waiver in Writing.** No provision of this Agreement can be amended or waived, except by a statement in writing signed by the Party against which enforcement of the amendment or waiver is ought, and any such waiver shall apply only to the matter or instance specifically waived.

21. **Retained Jurisdiction.** Consistent with Section E below, the Parties agree that the United States District Court for the Middle District of Tennessee shall retain jurisdiction to enforce this Agreement and award remedies for any breach of this Agreement.

22. **Severability.** Should any provision of this Agreement be declared invalid or unenforceable by operation of law or by any tribunal of competent jurisdiction for any reason, the remaining provisions hereof shall remain in full force and effect.

23. **Construction.** This Agreement has been jointly negotiated. The language of this Agreement shall be construed as a whole accordingly to its fair meaning and not strictly construed for or against any Party.

24. **Authorization.** The representatives executing this Agreement on behalf of the Parties are empowered to do so and thereby bind the Parties according to the terms of this Agreement, subject to the statutory approval of Attorney General Jonathan Skrmetti set forth in Tenn. Code Ann. §20-13-103 .

25. **Further Assurances.** The Parties agree to take all actions reasonably necessary to effectuate the approval, performance, validity, and enforceability of this Agreement.

26. **Counterparts.** This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The photocopied, digitally scanned, or electronically signed signature of a party hereto shall be considered as if it was the original.

## B. CHANGES TO CONDITIONS OF CONFINEMENT

27. **Individualized Plan.** The terms and conditions listed in this Section B are referred to as the "Individualized Plan." Christa Pike has been Level A since June 2022. During her time spent at Level A, Ms. Pike's privileges have largely reflected those identified in Phase One. Ms.

Pike agrees to proceed through the phases, as described below, in order to accommodate the need for security and protocol planning.

a. Phase One:

   i. **Starts upon entry of settlement and lasts one month in order to facilitate DJRC planning and preparation for future phases.**
   ii. Housing: Remain in current housing.
   iii. Work: Implement job assignment within B Pod with larger area with tape up.
   iv. Exercise/Recreation: Participate in recreation in cages adjacent to other individuals.
   v. Education: Option to participate in remote classes via tablet once available to the inmate population at DJRC, participate in an individual class with approved faculty, and/or a minimum of two hours Arts & Crafts instruction (in the same form or fashion that was being provided at the outset of Ms. Pike's Level A transition).
   vi. Religious Services & Activities: Option to participate in remote religious services or individual, contact, religious counseling.
   vii. Counseling: Option to participate in confidential, individual, contact counseling in a similar time and manner as other inmates, outside of earshot, though within the sightline, of DJRC personnel, with a specific focus on building toward socialization opportunities.
   viii. Law clerk / Legal Advisor: Will be provided and scheduled systematically in conjunction with entire offender population.

b. Phase Two:

   i. **Begins following one month of no disciplinaries during Phase One and lasts three months.**
   ii. Housing: Remain in current housing.
   iii. Work: Complete job assignments alongside up to five close custody workmates within the Unit, for at least two hours per day (TDOC Policy 503.03 provides for group interactions of up to 6 individuals at Level B, and Ms. Pike's current Level A Memorandum provides for a minimum of four hours/day of work).
   iv. Social Interaction: Receive meals and rec time with workmates.
   v. Exercise/Recreation: Participate in recreation in cages with workmates.
   vi. Education: Option to participate in remote classes via tablet once available to the inmate population at DJRC, participate in an individual class with approved faculty, and/or a minimum of two hours Arts & Crafts instruction.
   vii. Religious Services & Activities: Option to participate in group religious services or individual, contact, religious counseling.

viii. Counseling: Option to participate in confidential, individual, contact counseling in a similar time and manner as other inmates, outside of earshot, though within the sightline, of DJRC personnel.

ix. Law clerk / Legal Advisor: will be provided and scheduled systematically in conjunction with entire offender population.

c. Phase Three (Conditions under Level A upon completion of Phases One and Two):

i. **Begins following three months of no disciplinaries during Phase Two and remains in place absent disciplinaries.**

ii. Housing: Remain in current housing or comparable housing that allows compliance with the terms of the Individualized Plan.

iii. Work: Eligible to work as administrative assistant/clerk within the Unit, allowing increased pay and interaction with staff and other inmates, including the following:

- Pay consistent with inmate jobs Policy 504.04;
- Make copies and distribute supplies throughout Unit 3, or such other Unit to which Ms. Pike may be housed in the future;
- Opportunity to work in the core of the Unit with close custody inmates performing their respective jobs;
- Clerk duties are six hours per day, Monday through Friday;
- Work assignments will come directly from Unit Manager and Unit Sergeant;
- Additional clerk duties may include having a workstation with computer handling basic computing tasks;
- All clerk duties would be performed without restraints in the Unit, even when other inmates are present;
- Clerk duties allow Ms. Pike to eat lunch outside of her cell in the day room with close custody inmates;

iv. Social Interaction: Participate in supervised group interactions in A Pod or with the group workmates or close custody individuals housed in B Pod, including group meals, group classes, lobby time, and group religious services.

v. Exercise/Recreation: Participate in recreation in cages in the same cage as others.

vi. Education: Option to participate in remote classes via tablet once available to the inmate population at DJRC, participate in classes with approved faculty, or a minimum of two hours Arts & Crafts instruction.

vii. Religious Services & Activities: Option to participate in group religious services or individual, contact, religious counseling.

viii. Counseling: Option to participate in confidential, individual, contact counseling in a similar time and manner as other inmates, outside of earshot, though within the sightline, of DJRC personnel.

ix. Law clerk / Legal Advisor: Will be provided as provided in TDOC Policy 503.03(VI)(K)(3)(b)(9).

x. Nothing in this Phase Three section permits Ms. Pike to interact with inmates below the close custody classification or with inmates outside her Unit.

28. **Level B Conditions.** In the event that Ms. Pike is classified as Program Level B:

a. TDOC will develop a facility-level policy that allows for comparable privileges as those outlined in TDOC Policy 503.03. This includes sufficient opportunities for small group interactions during work, exercise, education, meals, religious activities, counseling, and lobby time. The policy will continue to allow Ms. Pike to participate in individual religious counseling, education, and law clerk services.

b. The Warden shall submit this individualized plan for the Commissioner's approval within 14 days of reclassification.

c. Upon approval, TDOC will immediately provide a copy of the individualized plan to Ms. Pike.

29. The Individualized Plan will be implemented immediately at the signing of the Settlement Agreement. After successful completion of Phase Two, the Phase Three conditions listed under the Individualized Plan will be implemented immediately.

30. The opportunities and possible advancement in the Individualized Plan are all conditioned on Ms. Pike's maintaining her Level A status. If she fails to remain Level A, any advancement back to Level A will be determined either by progression through the "phases" in the Individualized Plan, or through the classification, review, and advancement process governed by TDOC Policy 503.03.

31. **Policy Waiver.** So long as Ms. Pike is the sole inmate in the facility where she is housed who is under a sentence of death, subject to the Mandatory Segregation policy, and classified as Level A or Level B, the Commissioner grants her a waiver of the Mandatory Segregation policy of TDOC Policy 404.11 and any related mandatory segregation provisions of Policy 503.03 to the extent necessary to effectuate this Agreement.

32. **Contemporaneous Approval of Individualized Plan.** This Settlement Agreement shall serve as documentation of the waiver granted in Paragraph 31, which shall become effective immediately at the signing of the Settlement Agreement. The Individualized Plan must be approved by the Commissioner at the entry of the Settlement Agreement.

## C. ATTORNEYS' FEES AND COSTS

33. **Attorney's Fees and Costs.** Payment by Defendants to Ms. Pike or her counsel for expenses, attorneys' fees, and costs shall be made in accordance with the terms of a separate agreement. The parties acknowledge that the payment provided in the separate agreement shall constitute full payment of all claims for fees, costs, and expenses associated with this litigation.

## D. **MONITORING AND ENFORCEMENT OF AGREEMENT**

34. **Dismissal, Forum, and Jurisdiction.** Within five (5) days after granting the waiver described in Paragraph 31 and implementation of the Individualized Plan, the Parties shall file a joint motion to dismiss the Action in the United States District Court for the Middle District of Tennessee ("Dismissal") attaching this Agreement. Such Dismissal shall provide that the United States District Court for the Middle District of Tennessee shall retain jurisdiction over the Parties to enforce the Agreement and to award remedies for any breach of the Agreement. The Parties hereby consent to personal jurisdiction and venue in the United States District Court for the Middle District of Tennessee.

35. **Monitoring.** Defendants acknowledge and agree that the Individualized Plan shall remain in place for Ms. Pike, subject to any level changes due to any disciplinary convictions per TDOC Policy 503.03.

36. **Remedies.** In the event of any breach of this Agreement, the Parties shall have all remedies that may be available to them at law or in equity, except the right to rescind or invalidate the Agreement. In the event of any material breach of this Agreement, the substantially prevailing party shall be entitled to an award of its reasonable attorneys' fees incurred, as well as all costs and expenses of litigation and collection.

**IN WITNESS WHEREOF,** the Parties have signed this Agreement on the date(s) shown below:

**[SIGNATURE PAGES FOLLOWS]**

**Christa G. Pike**

Christa G. Pike

Date: 7-9-24

**Brian D. Roark**
Counsel for Plaintiff Christa Pike

Brian D. Roark

Date: 7/9/24

**Angela L. Bergman**
Counsel for Plaintiff Christa Pike

Date: 7/9/24

**Frank Strada**
Commissioner, Tennessee Department of Correction

______________________________

Date: 7.23.2024

**Taurean James**
Warden, Debra K. Johnson Rehabilitation Center

______________________________

Date: 7/24/2024

**Jen Brenner**
General Counsel, Tennessee Department of Correction

______________________________

Date: 7/23/24

**Donna L. Green**
Senior Assistant Attorney General
Counsel for Defendants

______________________________

Date: 9/4/24

**Cody N. Brandon**
Senior Assistant Attorney General
Counsel for Defendants

______________________________

Date: 9/5/24