**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHRISTA PIKE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:22-cv-537** |
| **v.** | ) | **Judge Crenshaw** |
| | ) | |
| **CHRISTOPHER HANSEN, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' RESPONSE OPPOSING PLAINTIFF'S EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT**

## INTRODUCTION

Plaintiff Christa Pike's motion to enforce the settlement agreement between the Parties should be denied. Based on the medical judgment of her treating providers, she is recovering in the infirmary at Debra K. Johnson Rehabilitation Center (DJRC) from injuries sustained in an execution attempt on September 30. The Tennessee Department of Correction (TDOC) has a constitutional duty to offer medical care to Pike. Under binding precedent, she cannot force TDOC to compromise that duty in favor of an ill-conceived housing and treatment plan not contemplated in the Agreement that would lead to inferior access to medical care.

Pike's condition is being monitored closely, and she can be discharged from the infirmary when medically appropriate. She should not be prematurely transferred to a separate DJRC housing area that is not equipped for her medical needs or her security classification. The Court should reject her attempt to drag the judiciary into the minutiae of prison administration and decline to grant the relief requested.

## BACKGROUND

The Parties reached an Agreement that resolved all claims in this case in 2024. *See* Agreement, D.151-1. The Agreement covers Pike's housing at DJRC through an Individualized Plan, which governs her access to social interaction, work, recreation, education, religious practice, counseling, and legal services. *Id.* ¶ 27. The Agreement says nothing about medical care, whether in the DJRC infirmary, an outside medical facility, or otherwise. *See generally id*. By its own terms, it was drafted not to be construed against either Party. *Id.* ¶ 23.

On September 30, TDOC attempted to carry out Pike's death sentence, but she survived. Mot., D.151 at 2. She received care in a private hospital for several days and was discharged back into TDOC custody at DJRC on October 9. *Id.* Since then, she has received care in the DJRC infirmary for injuries sustained in the execution attempt. Declaration of Dr. Eduardo Ortiz ¶¶ 4-6, attached as Exhibit 1. She is in the infirmary based solely on the medical judgment of her treating providers. *Id.* ¶ 8. She contends that this arrangement violates the Agreement because her social interaction is curtailed. Mot., D.151 at 8-9. Her attorneys believe it would be "safest and most appropriate" if she were moved to a different part of DJRC where nurses could see her "as needed." Bergman Decl., D.151-2 at 7-8. The motion seeks to have Pike removed from the infirmary and housed elsewhere in DJRC. Mot., D.151 at 8-10.

## LEGAL STANDARD

The Agreement is to be construed under Tennessee law, unless federal law supersedes. Agreement, D.151-1 ¶ 18. As this Court interprets the Agreement, it "must ascertain the intention of the parties and give effect to that intention consistent with legal principles." *Great S. Homes, Inc. v. Eaton's Creek Park Real Est. Invs. Fund, LLC*, 207 S.W.3d 242, 245 (Tenn. Ct. App. 2006).

"The words of the contract should be given their usual, natural and ordinary meaning." *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

The common law has long imposed "a duty of good faith in the performance of contracts" in this State. *Wallace v. Nat'l Bank of Com.*, 938 S.W.2d 684, 686 (Tenn. 1996). But that duty has limits; it "depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *Id.* A court is thus "not at liberty to impose contractual liabilities not expressly assumed by the parties." *Great S. Homes,* 207 S.W.3d at 247.

## ARGUMENT

### I. The Settlement Agreement Has Not Been Breached, and Pike's Requested Enforcement Is Not Warranted.

The Court should deny the motion because the Agreement has not been breached. It did not contemplate temporary, medically necessary housing, let alone the round-the-clock care Pike is currently receiving for injuries sustained from an unsuccessful execution attempt. The requested relief would also expose TDOC to constitutional liability by transferring Pike to a lower level of care, against the medical judgment of her treating providers.

#### A. The Agreement did not contemplate temporary housing arrangements due to medical needs, let alone Pike's current needs.

Pike's argument for breach stumbles out of the gate because the Parties did not contemplate medical care at all in the Agreement, let alone round-the-clock care for injuries sustained from an unsuccessful execution attempt. The Parties' duty of good faith under the Agreement "does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties," and so it would violate well-settled principles of contract law to apply the Agreement to circumstances the Parties never imagined or addressed. *Wallace*, 938 S.W.2d at 687. The DJRC infirmary was in operation when the Agreement was drafted, and the Parties could have

drawn up terms about what would happen if Pike needed to receive medical care there. Yet they did not. For the Court to conclude that TDOC's decision to defer to Pike's medical providers is a breach would "impose contractual liabilities not expressly assumed by the parties." *Great S. Homes,* 207 S.W.3d at 247. The Court should decline to do so.

It would be one thing if TDOC had moved Pike to the infirmary under a pretext. But the sworn statements of Dr. Eduardo Ortiz and Assistant Commissioner Linda Thomas show that is not what happened. Pike's medical needs require the most intensive level of care available at DJRC, and the only place for that is the infirmary. Ortiz Decl. ¶¶ 9-13, Ex. 1. If Pike were transferred out of the infirmary, she would have far less access to medical care. *Id.* ¶¶ 12-13. And her security classification does not allow her to be transferred anywhere she likes at DJRC. *Infra* at 8-9. The Court should not stretch the terms of the Agreement to cover the relief Pike requests, which would go beyond "the reasonable expectations of the contracting parties" by subordinating her acute medical needs and the security needs of TDOC to her desire for social interaction. *Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015).

**B. Pike is not isolated, and her temporarily limited social interaction stems from her medical needs.**

Pike is not isolated or singled out for poor treatment. On the contrary, she has received visits from counsel and her spiritual advisor, and she is subject to the same visitation policies and procedures as any other inmate in the infirmary. Declaration of Linda Thomas ¶¶ 13-16, attached as Exhibit 2. She can also submit requests for other kinds of visitors, but she has not. *Id.* ¶ 16. TDOC does not intend to house Pike in the infirmary permanently or any longer than medically necessary, as determined by her treating providers. *Id.* ¶ 14; Ortiz Decl. ¶¶ 16-19, Ex. 1. In this respect, Pike is in the same position she was in when she was hospitalized in a private facility. In the infirmary and at the hospital, Pike could not work, socialize with other inmates, or join any

kind of group activity, which is what she complains about in her motion. Mot., D.151 at 2, 8. Here, as at the hospital, Pike's temporary separation from other inmates arose due to her medical needs, not any deliberate attempt to isolate her. Thomas Decl. ¶ 14, Ex. 2. Pike is therefore mistaken to assume that just because she is back at DJRC, she can craft her own hybrid housing and treatment plan. *Cf. Mulazim v. Corrigan*, 7 F. App'x 427, 429 (6th Cir. 2001) (finding that an inmate had "no constitutional right to be confined in a particular cell").

After all, the reason Pike is in the infirmary and not elsewhere is that her injuries require around-the-clock access to the full complement of medical services available at DJRC: physician coverage, nursing care, medication administration, diagnostic capabilities, and constant monitoring, including on nights and weekends. Ortiz Decl. ¶¶ 10-11, Ex. 1. This immediate access was vital earlier in October. *Id.* ¶ 14.

Pike cannot receive this level of care anywhere else at DJRC. *Id.* ¶¶ 10-13, 15. If she were moved anywhere else in the facility, she would lose immediate access to a physician, nurses, and medication. *Id.* ¶ 13. Her providers would only be able to track her healing and medical needs on a periodic basis at best, and any emergent need for care would take longer to address. *Id.* ¶¶ 13, 15. The Court should decline to grant such ill-conceived relief that would result in less of the care Pike's providers have determined is necessary, particularly when courts give a wide berth to prison officials' treatment decisions. *Rhinehart v. Scutt*, 894 F.3d 721, 744–45 (6th Cir. 2018). Second-guessing those decisions would hardly give effect to "the intention of the parties . . . consistent with legal principles." *Great S. Homes, Inc.*, 207 S.W.3d at 245.

Pike also ignores that this arrangement is temporary. Pike's providers assess her daily to track her progress, and they are evaluating when it will be safe and medically appropriate for her to leave the infirmary. Ortiz Decl. ¶¶ 18-19, Ex. 1. This is not a situation where an inmate has been

held back in an inappropriate care setting long after her medical needs resolved. Pike only recently survived an execution attempt and is receiving care for her injuries. Her motion jumps the gun and tries to enforce the Agreement based on a misrepresentation of the facts. In reality, the motion is "anchored in future events that may not occur as anticipated, or at all," which means there is no ripe dispute for this Court to review. *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 562 (6th Cir. 2008).

### C. Pike's demands conflict with TDOC's constitutional duty to provide medical care.

Finally, the Court should decline to find a breach because TDOC is abiding by its constitutional duty to offer medical care, a duty that supersedes its obligations under the Agreement. Pike's requested relief would expose TDOC to liability for transferring her to a lower level of care where her medical needs cannot be met.

TDOC has a duty under the Eighth Amendment to care for Pike's medical needs; otherwise, "those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). That duty cannot be contracted or delegated away. *Carl v. Muskegon Cty.*, 763 F.3d 592, 596 (6th Cir. 2014). The Constitution is the "supreme law of the land." *Smith v. O'Grady*, 312 U.S. 329, 331 (1941). It takes precedence over all lesser authority, and one consequence of that supremacy is that "[p]arties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them." *Norman v. Baltimore & O.R. Co.*, 294 U.S. 240, 308 (1935).

TDOC is fulfilling its constitutional duty by ensuring that Pike is receiving medical care in the infirmary based on the medical judgment of her treating providers. She needs not just ongoing medical care for any known injuries, but also immediate access to the full suite of medical services offered at DJRC in case of unexpected complications. Ortiz Decl. ¶¶ 9-12, Ex. 1. These services

are only available in the DJRC infirmary, not the separate "pod" Pike demands. *Id.* ¶¶ 10-13; Thomas Decl. ¶¶ 18-21, Ex. 2.

Given these facts, Pike's attempt to press this Court into duty as a physician offering a second opinion on her treatment plan conflicts with TDOC's constitutional duty. TDOC can meet its Eighth Amendment obligations under the current setup, where Pike can receive around-the-clock care at the highest level possible at DJRC. Ortiz Decl. ¶¶ 9-15, Ex. 1; *see Phillips v. Tangilag,* 14 F.4th 524, 536–37 (6th Cir. 2021) (refusing to find deliberate indifference where an inmate received "extensive care" wherein "doctors ordered many expensive tests, identified the problem, and followed a treatment plan"). But "[t]ransferring a prisoner in need of urgent medical attention to a facility that the official knows is unable to provide the required treatment" would likely expose TDOC to liability. *Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003). The Court should not force TDOC to choose between acceding to Pike's demands and obeying the Constitution.

## II. The Court Should Defer to Proven Medical Judgment and Security Interests.

It is not a federal court's role to manage Pike's "group meals, recreation, work, and other social interaction." D.151 at 10. Pike insists that this Court get into the business of prison administration and the practice of medicine all at once. *Id.* at 8-10. She wants "both medical services and social contact with other women receiving temporary medical care" based on what her attorneys think would be a "safe[] and appropriate" housing arrangement in another part of DJRC. *Id.* at 8; Bergman Decl., D.151-2 at 7. But those demands ignore the Supreme Court's repeated warnings that courts are "ill equipped" to deal with "problems of prison administration," which are precisely what she raises. *Turner v. Safley*, 482 U.S. 78, 84 (1987). She thinks she knows better than her treating providers and TDOC officials about how to treat her medical needs while keeping her safe and secure, all while running a prison that houses scores of other inmates with

their own medical and security needs. Mot., D.151 at 9-10. But this Court "must accord substantial deference" to TDOC officials' decisions about Pike's medical care, safety, and housing arrangements, even in the context of the Agreement she seeks to enforce. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Those decisions are founded on her providers' professional medical judgment, which "federal courts are reluctant to second-guess." *Vick v. Core Civic*, 329 F. Supp. 3d 426, 445 (M.D. Tenn. 2018); *see* Ortiz Decl. ¶¶ 3, 8, 18-21, Ex. 1. Her providers are monitoring injuries and conditions that require constant monitoring and care. *Id.* ¶¶ 4-7, 9-11. They have determined that Pike needs round-the-clock care only available in the infirmary to monitor and treat those issues. *Id.* ¶¶ 8-11, 18-19. If Pike were moved out of the infirmary, she would have only periodic access to medical care at best. Her providers believe that is not in her best interest. *Id.* ¶¶ 3, 8, 19. Taken together, these concerns are "a classic example of [] matter[s] for medical judgment" that the Court should not critique. *Rhinehart*, 894 F.3d at 744–45.

The Court should also "accord[]" TDOC officials' decisions about safety and security "deference" because "problems of prison administration are peculiarly for resolution by prison authorities." *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997), *supplemented,* 133 F.3d 382 (6th Cir. 1998). Pike's providers have determined the infirmary is the most medically appropriate place for her to be housed while she recovers, based solely on their medical judgment. Ortiz Decl. ¶ 8, Ex. 1. Yet TDOC operations officials must also account for security, particularly with respect to her requested transfer to another unit. Thomas Decl. ¶¶ 22-28, Ex. 2. Notwithstanding the Agreement's provision for a limited waiver of TDOC's mandatory segregation policy, Pike is still

classified as a maximum-security inmate. *Id.* ¶ 10. She once tried to murder another inmate[1] and was disciplined for an escape attempt. Am. Compl., D.9 ¶ 33. She therefore cannot pick and choose any housing assignment, which, like her classification, is "a matter ordinarily left to the expertise and discretion of prison administrators." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1124 (M.D. Tenn. 1982).

That includes Unit 3A, which her attorneys think is the "safest and most appropriate" place for her. Bergman Decl., D.151-2 at 7.[2] But that unit is not medically appropriate for Pike. Ortiz Decl. ¶¶ 10-15, Ex. 1. Nor is it appropriate for her maximum-security classification. Thomas Decl. ¶¶ 19-27, Ex. 2. It should come as no surprise that maximum-security inmates cannot be allowed to roam a separate DJRC housing area that essentially operates as a nursing home. *Id.* ¶¶ 19, 24. The "wide-ranging deference" the Court must afford these decisions compels the conclusion that these decisions belong in the province of prison administration, which courts are "ill-equipped to deal with." *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 126 (1977)). The Court should therefore reject Pike's request for a transfer to a unit where TDOC officials have determined that she and others would not be safe.

**CONCLUSION**

The motion to enforce the Agreement should be denied. Defendants have not breached the Agreement, and Pike is not entitled to dictate the terms of her medical treatment and housing.

---

[1] *See State v. Pike*, No. M2005-00738-CCA-R3CD, 2006 WL 547997, at *1 (Tenn. Crim. App. Mar. 6, 2006).

[2] Pike's attorneys erroneously call this unit "Unit 3 D Pod." Bergman Decl., D.151-2 at 7. This conflates two separate housing areas: Unit 3D is transient housing, while Unit 3A is the assisted-living unit counsel appears to be describing. Thomas Decl. ¶ 18, Ex. 2. Unit 3A is the only unit at DJRC that matches their description. *Id.*

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*/s/ John W. Ayers*

DONNA L. GREEN (BPR 019513)
Managing Attorney
CODY N. BRANDON (BPR 037504)
Deputy Attorney General
JOHN W. AYERS (BPR 037494)
Assistant Attorney General
SAMANTHA P. MORRIS (BPR 038178)
Assistant Attorney General
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 741-1982
Fax: (615) 523-1797
donna.green@ag.tn.gov
cody.brandon@ag.tn.gov
will.ayers@ag.tn.gov
samantha.morris@ag.tn.gov

*Counsel for Defendants*